Judge Marshall,
delivered the opinion of the Court.
On the 10 th day of July, 1817, John Caldwell entered into a contract with Lawson Moore and Elijah Iiarlan, for the sale of a tract of land, supposed to contain five hundred and eighty seven acres, fox the price of eight thousand dollars. Of which, two thousand five hundred dollars were paid in hand, two thousand five hundred doilars in-fifty days, and the remaining three thousand dollars were secured by two notes of fifteen hundred dollars each, payable in one and two years. A separate note for two hundred and seventy dollars, the interest upon these two- notes of fifteen hundred dollars, from their date to the day of payment, was also executed, and made payable in eighteen months. Caldwell agreed to convey the land when the purchase- money should be paid, with a warranty in. the deed to return the purchase money only, at the rate of fifteen dollars per acre, for so much of the land as should be eventually taken by a better title.
In 1819, judgment having been previously obtained by Caldwell, upon one or more of the notes, and no part of the three thousand dollars with its interest having been paid, Moore and Harlan filed their bill, setting forth the contract as above, their payment of five thousand dollars, and that judgment had been obtained for the residue. They state, that one hundred and fifty eight acres of the tract was covered by an older patent held by Samuel Moore, of the possession of which they had been deprived by Moore, and that a writ of forcible entry and detainer for its recovery was pending; that another part of the tract, amounting to twenty seven acres, was covered by a- patent issued to. A. Bilbo, who claimed, it; and that George Caldwell had obtained a patent for six acres,, covering another portion of it — the two last *341 being founded on Kentucky Land Office treasury warv rants. These adverse claimants, together with John Caldwell, are made defendants, and called upon to exhibit their titles, that it may be ascertained, whether, and how far, that of John Caldwell is the best, &c. And the complainants pray, that all further proceedings for the collection of the balance of the púrchase money, may be enjoined, until the matters of the bill are de? termined.
New agreement, ofdthe°^disputed part the land, omi^'contract and the attitude .were^essentially changed,
It is unnecessary to enquire whether the facts stated in the bill, furnished any sufficient ground, for the interference of a Court of Equity, either in enjoining the proceedings at law, or instituting an investigation into the merits of the interfering claims. Nor is it important to state in detail, the various proceedings which ensued in this investigation. Some of these proceedings are not, in the present attitude of the cause, properly subject to the revision of this Court; and whatever questions might arise as to their regularity, are merged by an agreement of the principal parties, evidenced by a deed from John Caldwell to Moore and Harlan, bearing date the 6th day of January, 1827.
This deed, after reciting the original contract, the payment of five thousand dollars, and the injunction as to the residue of the purchase money, on account of interfering claims, proceeds as follows: — “and whereas, the “ said Harlan has this day paid to the said John Cald- “ well, one hundred and seventy three dollars more of “ said consideration money, and the parties having come “ to the following agreement, — to wit; the said Oald- “ well to convey, and the said Moore and Harlan to re- “ ceive said conveyance for the aforesaid five hundred “ and eighty seven acres purchased as aforesaid, with the “ exception of the aforesaid interferences and conflicting “ claims, to wit: one in the name of Samuel Moore,' “ amounting to one hundred and fifty four acres and one “ hundred and fifty seven poles, one in the name of “ Archibald Bilbo, amounting to twenty seven acres, and “ one in the name of George Caldwell, amounting to six “ acres, in all one hundred and eighty seven acres and “ one hundred and fifty seven poles' — the said last men. *342 “ tioned number of acres is not intended to be conveyed “hereby; but by agreement of the parties, that part of “ the first mentioned contract is to be suspended until “ John Caldwell shall be able to show by record evidence “ of his claim, or the one under which he claims the “ aforesaid land, being superior to the aforesaid conflict- “ ing claims, or such parts as he may be able to show “ as aforesaid; upon such result, the said part of the “ contract now suspended is to be complied with, ac- “ cording to the original terms thereof.” And in consideration of the premises, Caldwell conveys, with general warranty, the five hundred and eighty seven acres, subject to the exception of one hundred and eighty seven acres and one hundred and fifty seven poles.
Pleadings upon the last agreement, and new facts.
Decree of the Circuit Court.
By an amended bill, filed in 1828, and which was never answered, the complainants allege, that by the judgment and determination of the Mercer Circuit Court, the claims of Samuel Moore and Archibald Bilbo had been adjudged superior to the claim of John Caldwell— whereby one hundred and eighty two acres of the land had been taken — but John Caldwell was no party, either to the decree or judgment.
By another amended bill, filed in July, 1832, the complainants set up the deed of January, 1827, and the agreement and other facts therein recited; charge that the land when purchased by them, was subject to direct tax, which they had been compelled to pay, amounting to twenty two dollars; and allege, that they have paid the full amount of all that was due to Caldwell, for as much land as he has conveyed, or will ever be able to convey, and pray that he should be perpetually enjoined from collecting the residue of the purchase money, on account of the entire failure of consideration.
In answer, Caldwell admits, that they may have paid the direct tax, to wit: twenty two dollars, as charged, but protests against his liability to pay it; refers the matters arising on the deed and its recitals, to the Court; and contends, that the complainants are still largely indebted to him.
The cause came on for hearing in October, 1833; and, as Caldwell had not only failed to produce record *343 evidence of the superiority of his title, but made no attempt or promise to do it, and indeed produced no title of any sort, a decree was rendered, rescinding the contract, so far as related to the one hundred and eighty seven acres, and one hundred and fifty seven poles, which was covered by the interfering claims referred to in the deed of 1827.
A party sells a tract of land, receives part of the purchase money, and binds himself to make the deed upon payment of the balance: he is not bound to convey until the balance is paid; and the payment cannot "be withheld upon an alleged defect of title, but by showing that the vendor is unable to make an available title. But, conflicting claims appearing, a balance of the price is injoined; after which, the parties agree, that a conveyance shall be made of all the land not included ip any adverse claim, which is done, and the amount of that portion adjusted and paid. As to the •part adversely claimed, they agree to suspend the contract until the vendor can show that he 'has the best title. This new agreement changes the condition of the parties, and severs the contract; which, so far as the conveyance extends, is executed, and the chancellor confirms ‘it. As to the residue, the vendor takes upon himself to show the superiority of his title, ■and cannot enforce the payment till he does it; and, no time being fixed, he must do it, in a-reasonable time. — Seven years having elapsed (in this case,l and no effort made by the vendor, to show that he has a good title, the chancellor presumes he has none, and thus far, rescinds the contract.
In adjusting the the claims of the parties, the complainants were charged with eight thousand dollars, as the price of the five hundred and eighty seven acres. They were credited with the payment of five thousand one hundred and seventy three dollars, as stated in the deed of 1827, and twenty two dollars paid on account of direct tax, making five thousand one hundred and ninety five dollars. To this was added, asa credit, the value of one hundred and eighty seven acres of land not conveyed, at the rate of fifteen dollars per acre, amounting to two thousand eight hundred and five dollars^ which makes up the full sum of eight thousand dollars; upon which result, the Court came to the conclusion, that nothing more was due to Caldwell; and therefore perpetuated the injunction, as to the collection of all the purchase money remaining unpaid upon the original notes, and confirmed the contractas to the land (about four hundred acres) conveyed by the deed of 1827.
It is contended on the part of John Caldwell, the vendor, that the contract should not have been rescinded as to any portion of the land, and that, he is entitled to the full benefit of his judgments at law.
If the case stood upon the original contract of sale, there might have been some doubt whether the complainants had shown themselves entitled to a rescission. But the deed of 1827, and the agreement therein recited? *344 has materially varied the attitude of the parties. The vendor has executed a deed for part of the land, which, by the terms of the original agreement, he was not bound to do, until the purchase money was all paid; and the residue of the contract is suspended upon a contingency then for the first time introduced. The portion of the contract which is suspended by this new arrangement, is that which relates to the one hundred and eighty seven acres and one hundred and fifty seven poles not then conveyed, including, on the one side, the payment of the price of that quantity, according to the terms of the purchase, and on the other, the conveyance of that part of the land. As no other part of the contract is suspended, but all the rest is in fact executed, on one side— of course, the equivalent of that partial execution may, and should be enforced, according to the original stipulation of the parties.
But as the contract, so far' as it relates to the one hundred and eighty seven acres and one hundred and fifty seven poles, and the payment therefor, is suspended until the vendor shall show record evidence of the superiority of his title, Caldwell has no right to claim the execution of that part of the contract, until he performs what he himself has made a precedent condition. By the original contract, the vendees could not have evaded the payment of the money but by showing that their vendor had no title, or at least, none which was available; by the ngw agreement, they are not bound to pay until he shows the superiority of his title. The vendees are out of possession; the purchase money is on interest; the vendor fails, for seven years or more, to show the superiority of his title, and in fact, to show any title whatever; and the question is — how long has he a right to hold them in this unequal and unjust condition? The agreement, it is true, fixes no time within which he is to produce the evidence of superior title; but the law interposes and limits the period, not indeed by a definite number of months or years, but by that time which is reasonable, under the circumstances. And as he has not, within seven years, taken a single step towards producing or procuring the promised evidence, and does not *345 promise that he will, or pretend that he can do it; we think the conclusion a safe one, that he either cannot or will not produce it.
Land is sold, the quantity ascertained and described, as so much “more or less:” those words are presumed to be used out of mere caution; and, there being no suggestion that the tract embraces different qualities, it is presumed that the value of a part taken by other claims, bears the same proportion to the price of the whole, that the quantity lost bears to the quantity stated in the deed.
Sale ofland confirmed in part, rescindedin part: vendoris entitled to the purchase money,pro rain, for the part confirmed. As to the partforwhichthe contract is rescinded, there is to be nothing paid, except upon an account for rents, improvements Sfc.
Why should the contract be any longer suspended? A reasonable time has certainly elapsed, for the vendor, Caldwell, to produce the proper evidence of his title if he ever means to do it; and it is time that the contract should be determined, either by executing or rescinding it. The facts justify the conclusion, that he never can entitle himself to an execution of the contract, on the terms stipulated in the last agreement; and as the other party prays to be relieved from it, the Chancellor properly decided, that the suspended contract should be rescinded.
There seems to be in this case, little if any of the difficulty which sometimes arises in decreeing a partial rescission. The contract has already been severed, and that part which remains suspended, and which is to be rescinded, has been separated from the rest by the parties. Nor is there any difficulty in adjusting the rights pertaining to each, in this state of things. The quantity of land originally sold, was five hundred and eighty seven acres, as mentioned in the article of agreement — it had been previously surveyed for Caldwell, and the quantity being thus ascertained, the words ‘more or less’ are to be considered as having been annexed to the number of acres stated in the agreement, from motives of caution, and not from any disregard to the actual quantity. It was a sale of a certain number of acres, for a certain sum of money; and as there is no suggestion of any difference in the quality of different portions of the land, the price which was to have been paid for the one hundred and eighty seven acres and one hundred and fifty seven poles, is easily ascertained. Of course, in rescinding the contract as to that quantity, this price, with its interest from the date of the original sale, should be perpetually enjoined. On the other hand, Caldwell the vendor is clearly entitled to be paid the original price agreed on, for so much of the land as he has actually conveyed, with interest, from the date of the sale, on such part as he has not received. And if the complain *346 ants have received the profits of any part of the land, for which the contract is rescinded, or made any valuable improvements on it, an account thereof should be taken, as is usual in such cases. We see no reason why the equitable rule of placing the parties as nearly as possible in statu quo, should be departed from in this case. This rule requires, that the purchasers should pay for ■what they have received, and restrains the vendor from collecting the purchase money for so much of the land as it -is found he cannot or will not convey.
"A vendor sells 587 acres, for $8000 ($13 61 per acre,) and covenants to pay for any that is host, at $15 per acre, without interest. Tenyears tffterwards, by a new agreement, and a decree, the contract is confirmed, as to 400 acres, and rescinded as to the residue. Thepurchaser contends that the amount ■of the lost land, at $15 per acre, is to be deducted from the $8000, and the balance having been satisfied, that he is liable for nothing more. The vendor claims the whole purchase money with interest on it, deducting the am’t of the lost land, at $15, without any interest on that. Held, that the new agreement and the decree annulled the original contract, as well as to the terms of refunding, as in other respects; andthat the purchaser should pay for-the 400 acres, at the same rate that the whole would cometo at the agreed price,, with interest on payments delayed.
*346 Both parties, however, object to the application of this rule, in the present case. The purchasers are not content with being relieved from performing their part of the original contract relating to the one hundred and eighty seven acres one hundred and fifty seven poles, which required them to pay for it at the rate of about thirteen dollars sixty one or sixty two cents an acre, with interest from the date; but claim, that while they are .charged only with the original price, without interest, (which is not warranted by the contract,) their vendor shall be charged for the same quantity at the rate of fifteen dollars per acre, which by the contract, if it had been carried into effect, he would have been bound to refund, for such part of the land as might be lost. The effect of this would be, to release them from paying for-a part of the land, which has been actually conveyed to them, with warranty, and the possession of which they are now enjoying. The claim of the vendor is at least as .unreasonable. He contends that, although he has agreed to suspend the original contract as to the one hundred and eighty seven acres and one hundred and fifty seven poles, until he shall produce a superior title, and although he has shown by his conduct, that his title is inferior, if he has any, yet he shall receive the price of that quantity according to the original contract, with interest till paid, subject to a deduction of fifteen dollars an acre only. The effect of which would be to give him a large sum of money for land which he has not conveyed, and which he is unable to convey; and to hold the purchasers bound by the terms of a contract, *347 from which they have derived no benefit, and with which he is wholly unable to comply.
As to the 187. acres, the parties to be placed in statu quo — the vendor to take hack the land, and the purchaser to pay nothing for it, except upon an account for use fyc. improvements c-
Each party is desirous to apply, for his own benefit, and in his own way, that provision of the original contract which prescribes the sum to be inserted in the refunding warranty when the deed should be made. But the rescission of the contract extends to that provision, so far as it applies to the one hundred and eighty seven acres, as well as to the other terms of the original agreement; and, as the actual state of case is very different from that to which the provision was intended to apply, the criterion of damages furnished by it, is not only not obligatory upon the Chancellor, but affords him no aid whatever in the adjustment now to be made. There is nothing to be refunded to the purchasers for this part of the land, because they have never paid any thing for it. And the vendor has no right to be paid for it, because he cannot convey it, as he agreed to do. On this ground the original contract, to this extent, is rescinded, and, to this extent, no part of it can. be enforced in behalf of either party. As, in relation to this part of the land, nothing has been paid on the one side, and nothing has been or can be- conveyed on the other, there is nothing to be restored to either party, and neither has a claim upon the other. This part of the contract being rescinded, the case stands essentially on the same ground as if the original contract had embraced only the land which has been actually conveyed. And for that land, the purchasers are bound to pay, according to the original terms, so far as they have' not already done so.
The decree rendered is, therefore, erroneous, in as muchas it enjoins Caldwell, the vendor, from collecting so much of the purchase money and interest as remains unpaid, for the land actually conveyed.-
The decree is reversed, and the cause remanded, with directions to render a decree, rescinding the contract as to one hundred and eighty seven acres and one hundred and fifty seven poles of the land, as described in the agreement recited in the deed of January, 1827; to perpetuate the injunction as to so much of the purchase *348 money, with interest, as according to the original price per acre, was payable for that quantity of the land. And to dissolve the injunction for the residue: which however should be credited by one hundred and seventy three dollars paid on the 6th day of January, 1827, and by twenty two dollars, as paid on the 11th day of July, 1828 — when the amended bill setting up the payment of the last named sum, for direct tax due on the land, was filed..